# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Suzanne B. Conlon | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 6585 | **DATE** | 3/23/2000 |
| **CASE TITLE** | Thomas vs. Sgt Walden, et al | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Plaintiff's motion to compel is moot. Report on settlement set for 3/30/00 at 9:00 a.m.

(15-1)

*Suzanne B. Conlon*

(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | | | |
|---|---|---|---|
| ✓ | No notices required, advised in open court. | | **Document Number** |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | 3-24-00 | |
| | Docketing to mail notices. | date docketed | 17 |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| | | date mailed notice | |
| TP | courtroom deputy's initials | | |
| | Date/time received in central Clerk's Office | mailing deputy initials | |





# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Blanche M. Manning | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 1449 | **DATE** | 3/22/2000 |
| **CASE TITLE** | Zabelski vs. Apfel | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Plaintiff's motion for IFP is granted.

(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | |
|---|---|
| | No notices required, advised in open court. |
| | No notices required. |
| | Notices mailed by judge's staff. |
| | Notified counsel by telephone. |
| ✓ | Docketing to mail notices. |
| | Mail AO 450 form. |
| | Copy to judge/magistrate judge. |

number of notices

3-24-00 date docketed

PJO docketing deputy initials

date mailed notice

courtroom deputy's initials    rs

Date/time received in central Clerk's Office

mailing deputy initials

Document Number

5





# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles P. Kocoras | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 5889 | **DATE** | 3/23/2000 |
| **CASE TITLE** | Bandari vs. City of Chgo et al | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ■ Status hearing set for 4/19/2000 at 9:30 A.M..

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Ruling held. **ENTER MEMORANDUM OPINION:** The Court grants Defendants Hofbauer's and Sadler's motion (Doc 21-1) to dismiss Counts I, II, V and VI. Discovery cut-off date set for April 19, 2000 to stand.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | number of notices | | **Document Number** |
|---|---|---|---|---|---|
| | No notices required. | | | | |
| | Notices mailed by judge's staff. | | 3·24·00 | | 26 |
| | Notified counsel by telephone. | | date docketed | | |
| ✓ | Docketing to mail notices. | | | | |
| | Mail AO 450 form. | | docketing deputy initials | | |
| | Copy to judge/magistrate judge. | | | | |
| SCT | | courtroom deputy's initials | | date mailed notice | |
| | | | Date/time received in central Clerk's Office | mailing deputy initials | |

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

ROSS BANDARI,                               )
                                            )
                    Plaintiff,              )
                                            )
        vs.                                 )          99 C 5889
                                            )
CITY OF CHICAGO, a municipal                )
corporation, and Officer Robert Hofbauer    )
(Star No. 7833) of the Chicago Police       )
Department, and Officer Michael Sadler      )
(Star No. 5417) of the Chicago Police       )
Department,                                 )
                                            )
                    Defendants.             )

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

This matter comes before the Court on Defendants' motion to dismiss Counts I, II, V, and VI of Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, the Court grants Defendants' motion.

## BACKGROUND

Plaintiff Ross Bandari ("Bandari") filed a six-count complaint against Defendants Officer Robert Hofbauer ("Hofbauer"), Officer Michael Sadler ("Sadler"), and the City of Chicago ("the City"). This Court has already dismissed

26

all counts against the City, and presently, Defendants Hofbauer and Sadler (collectively, the "Defendants") move to dismiss Counts I, II, V, and VI. For the purposes of this motion, the Court is obligated to take as true the following alleged facts which come from Plaintiff's complaint.

On October 11, 1998, Bandari was standing near a parked motorcycle at Midway Airport. Officer Hofbauer approached the motorcycle and began writing in his citation book as he asked Bandari if the motorcycle was his. Bandari replied that the motorcycle was not his but that he was supposed to meet the driver there. Bandari told Hofbauer that the driver would be "right back" and attempted to persuade Hofbauer not to write a ticket. When Hofbauer told Bandari to "take a hike," Bandari responded that Hofbauer had a "bad attitude" and that Hofbauer did not "have to be such a jerk about it." The driver then arrived. Hofbauer, angered by Bandari's comments, threatened to arrest him. Because Bandari was frightened by the threat, he left the scene.

Apparently, Hofbauer then radioed Officer Sadler for assistance. Neither officer ever informed Bandari that he was under arrest. Hofbauer chased Bandari to the airport terminal entrance. Hofbauer and Sadler physically assaulted Bandari, tackling him and grabbing him. Sadler held Bandari's arms behind his back and

Hofbauer pummeled Bandari's arm, breaking the bones in Bandari's arms and elbows. An ambulance rushed Bandari to Holy Cross Hospital where he underwent emergency surgery to repair his crushed left Humerus bone. As a result of Hofbauer's and Bandari's assault, Bandari alleges that he suffers severe permanent injuries, including a dropped left wrist, grotesque scarring, and loss of movement in his left arm.

Bandari filed a six-count complaint against Hofbauer and Sadler, alleging: (1) assault; (2) battery; (3) excessive force; (4) false arrest; (5) intentional infliction of emotional distress; and (6) conspiracy and neglect or refusal to prevent wrong conspired to be done under §1983. Bandari has labeled his entire complaint, "Plaintiff's §1983 Complaint," and seems to maintain that §1983 serves as the basis for each of his counts. Thus, the Court will analyze Bandari's claims under §1983.

## LEGAL STANDARD

Bandari argues that because Defendants filed their Rule 12(b)(6) motion after filing an answer to Bandari's complaint, Defendants' motion to dismiss should be considered a motion for judgment on the pleadings pursuant to Rule 12(c). However, it is worth noting that Defendants specifically raised their Rule 12(b)(6)

arguments in their initial answer. Regardless of whether the Court considers this motion one under Rule 12(b)(6) or Rule 12(c), the outcome remains the same.

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the sufficiency of the complaint, not to decide the merits of the case. A defendant must meet a high standard in order to have a complaint dismissed for failure to state a claim upon which relief may be granted. In ruling on a motion to dismiss, the court must construe the complaint's allegations in the light most favorable to the plaintiff and all well-pleaded facts and allegations in the plaintiff's complaint must be taken as true. Bontkowski v. First Nat'l Bank of Cicero, 998 F.2d 459, 461 (7th Cir. 1993), cert. denied, 510 U.S. 1012, 114 S.Ct. 602, 126 L.Ed.2d 567 (1993). The allegations of a complaint should not be dismissed for failure to state a claim "unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Nonetheless, in order to withstand a motion to dismiss, a complaint must allege facts sufficiently setting forth the essential elements of the cause of action. Lucien v. Preiner, 967 F.2d 1166, 1168 (7th Cir. 1992), cert. denied, 506 U.S. 893, 113 S.Ct. 267, 121 L.Ed.2d 196 (1992).

A defendant may file a Rule 12(c) motion after the close of pleadings and move for judgment on the pleadings to dispose of the case on the basis of the underlying substantive merits. The appropriate standard for judgment on the pleadings is that applicable to summary judgment, except that the court may consider only the contents of the pleadings. See Alexander v. City of Chicago, 994 F.2d 333, 336 (7th Cir. 1993). Thus, all well-pleaded allegations are taken as true, and the facts and inferences to be drawn from those allegations are viewed in a light most favorable to the plaintiff. See id. With these principles in mind, the Court evaluates Defendants' motion.

## DISCUSSION

### I. Assault, Battery, and Intentional Infliction of Emotional Distress–Counts I, II, and V

Bandari brings Counts I, II, and V, which allege assault, battery, and intentional infliction of emotional distress, respectively, under §1983. Thus, his prayer for relief requests attorney's fees pursuant to 42 U.S.C. §1988, which allows a prevailing party to recover attorney's fees in a §1983 action. See 42 U.S.C. §1988(b). However, Bandari cannot base his §1983 claims on his claims of assault, battery, and intentional infliction of emotional distress.

In order to properly state a claim under §1983, a claimant must allege that he had a constitutionally protected right, that he was deprived of that right, and that the deprivation was caused intentionally by the defendant who acted under the color of state law. See 42 U.S.C. §1983; McNabola v. Chicago Transit Authority, 10 F.3d 501, 513 (7th Cir. 1993). Because a §1983 claim depends on the existence of a violation of a constitutional right, the threshold inquiry is whether the plaintiff can demonstrate that the defendant deprived plaintiff of a constitutional right. See Graham v. Connor, 490 U.S. 386, 393, 109 S.Ct. 1865, 1870-71, 104 L.Ed.2d 443 (1989) (§1983 itself is not a source of substantive rights).

In Counts I, II, and V, Bandari fails to allege that Hofbauer and Sadler deprived him of a cognizable constitutional right. Although Bandari alleges actions of Hofbauer and Sadler that were tortious, they do not implicate constitutional concerns. "The Due Process Clause ... does not transform every tort committed by a state actor into a constitutional violation." DeShaney v. Winnebago County Dep't of Social Servs., 489 U.S. 189, 202, 109 S.Ct. 998, 1006, 103 L.Ed.2d 249 (1989). There already exist state laws that directly address the alleged torts, and the United States Supreme Court has rejected making the Fourteenth Amendment's Due Process Clause a "font of tort law to be superimposed upon whatever systems may

already be administered by the States." <u>Daniels v. Williams</u>, 474 U.S. 327, 332, 106 S.Ct. 662, 665, 88 L.Ed.2d 662 (1986).

Bandari seems to argue that his claims for assault, battery, and intentional infliction of emotional distress implicate substantive due process concerns because they presumably illustrate the excessive force used in falsely arresting Bandari. Nevertheless, Bandari has already stated separate §1983 claims for excessive force and false arrest in Counts III and IV, and Defendants have not moved to dismiss these counts in this action. In so far as Bandari claims that his assault, battery, and intentional infliction of emotional distress claims each independently serve as a basis for separate §1983 claims, they fail as a matter of law.

Because Bandari's basic tort allegations in Counts I, II, and V do not allege constitutional violations, they cannot serve as bases for imposing §1983 liability on Hofbauer and Sadler. The Court therefore dismisses Counts I, II, and V.

## II. Conspiracy and Neglect or Refusal to Prevent Wrong Conspired to Be Done under §1983–Count VI

Bandari brings his Count VI conspiracy claim under §1983. He alleges that, "Defendant Officers and Hofbauer and Sadler conspired together, with the connivance of the City of Chicago, to conceal their conduct to deprive the Plaintiff of his Constitutional rights, privileges and immunities, including Equal Protection

of the Laws." Moreover, Bandari claims that he was denied the "full and equal benefit of the laws ... by the Defendants' combined actions in failing to conduct an adequate investigation...." Bandari's conspiracy claim against Hofbauer and Sadler is insufficient because it fails to allege that Hofbauer and Sadler agreed to act in concert with each other and because it fails to allege a constitutional deprivation.

Plaintiff's response to Defendants' motion to dismiss Count VI is difficult to decipher. It seems that Plaintiff is claiming that Defendants Hobauer's and Sadler's arguments only address the City's Count VI §1983 liability and not their own. Bandari states:

> Any references by the Individual defendants as to the obligations of the City (such as the existence of a duty to conduct a proper police investigation, which plaintiff incidentally does not allege a cover up by city officials with regard to the plaintiff's complaint to the the [sic] office of professional standards and subsequent internal investigation into the incident, all fall within the purview of the Defendant City of Chicago. This court having already dismissed the allegations of conspiracy against the City of Chicago, the individuals [sic] defendants objection to those allegations are now moot and not subject to dispute for failure to assert a claim upon which any relief can be granted by plaintiff against the City (and the officers alleged involvement with said conspiracy) at this time.

Nevertheless, Hofbauer and Sadler do not simply discuss the obligations and liabilities of the City. Defendants raise some legal arguments on their behalf similar to those raised by the City, but they are not precluded from doing so, especially

when it seems that Plaintiff makes similar accusations against them. Moreover, merely because the Court dismissed various claims against the City, Defendants' arguments on their own behalf for the same claims are not rendered moot.

In order to state a conspiracy claim under §1983, a claimant must allege "that defendants directed themselves toward an unconstitutional action by virtue of a mutual understanding" and must support this allegation with factual allegations suggesting a "meeting of the minds." Kunik v. Racine County, 946 F.2d 1574, 1580 (7th Cir. 1991). Unlike other claims, conspiracy is subject to a heightened pleading standard, and the plaintiff must allege facts in support of the cause of action. It is not necessary, however, to plead specific facts detailing a conspiratorial agreement, but a plaintiff must plead sufficient facts from which a conspiracy may be inferred. See Quinones v. Szorc, 771 F.2d 289, 290 (7th Cir. 1985). Nevertheless, Bandari utterly fails to allege any facts suggesting that Hofbauer and Sadler came to any agreement with each other to cover up their conduct or that they somehow contributed to a failure to investigate allegations of misconduct. Thus, Bandari's claim that Hofbauer and Sadler were members of some conspiracy is deficient and unsupported by the allegations. The Court dismisses Count VI.

Further, Bandari fails to allege that the conspiracy deprived him of some constitutional right. Although the Seventh Circuit has recognized a §1983 conspiracy claim where a police officer tries to cover-up unlawful conduct, the court has stated that the basis for this type of claim lies in the denial of a plaintiff's right of access to the courthouse. See Bell v. City of Milwaukee, 746 F.2d 1205, 1261 (7th Cir. 1984); Vasquez v. Hernandez, 60 F.3d 325, 329 (7th Cir. 1995). Thus, where there are no allegations indicating that defendants' cover-up prevented plaintiff from pursuing a tort action or that the value of such an action was reduced by the cover-up, a §1983 action cannot lie as there has been no injury over and above the underlying torts. See Mendez v. Henniger, No. 98 C 2694, 1999 WL 202907, at *3-4 (N.D. Ill. Mar. 29, 1999); Hawkins v. Mathus, No. 99 C 901, 1999 WL 96128, at *2-3 (N.D. Ill. Oct. 8, 1999). Because Bandari has not alleged, and is likely unable to allege, that his access to the courts has been denied by any cover-up, he has not claimed any injury above the underlying torts or provided any support for such a claim.

Likewise, Bandari's claim that the "Defendants" failed to conduct adequate investigations into alleged misconduct does not rise to the level of a constitutional deprivation. Police officers are not constitutionally mandated to conduct an

investigation at all. See Slagel v. Shell Oil Refinery, 811 F. Supp. 378, 382 (N.D. Ill. 1993), aff'd 23 F.3d 410 (1994) (police officer has no federal constitutional mandate to conduct investigation into plaintiff's assault charge).

Because Bandari has failed to allege that Hofbauer and Sadler had a "meeting of the minds" so as to engage in a conspiracy and because Bandari has failed to allege the deprivation of a constitutional right, his §1983 conspiracy claim against Hofbauer and Sadler fails. Accordingly, the Court dismisses Count VI.

## CONCLUSION

For the reasons set forth above, the Court grants Defendants Hofbauer's and Sadler's motion to dismiss.

Charles P. Kocoras
United States District Judge


Dated: __March 23, 2000__





## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Harry D. Leinenweber | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 97 C 2199 | **DATE** | 3/23/2000 |
| **CASE TITLE** | Frank A. Calabrese, et al vs. Square D Company | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
　　☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: Square D's post-verdict motion for judgment as a matter of law and for new trial is denied. Frank Calabrese's motion to enhance the award of patent infringement damages and for attorneys fees is denied. Frank Calabrese's motion to amend the judgment to add prejudgment interest is granted in the amount of $6,819,780.00.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | *number of notices* | **Document Number** |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | 3-24-00 | |
| | Docketing to mail notices. | | *date docketed* | 243 |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | *docketing deputy initials* | |
| WAP | courtroom deputy's initials | | *date mailed notice* | |
| | | Date/time received in central Clerk's Office | *mailing deputy initials* | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**F I L E D**

MAR 23 2000

FRANK A. CALABRESE and
KATHLEEN CALABRESE,

           **Plaintiffs,**

      **v.**

SQUARE D COMPANY,

           **Defendant.**

Judge Harry D. Leinenweber
U. S. District Court

Case No. 97 C 2199

Judge Harry D. Leinenweber

DOCKETED
MAR 2 4 2000

## MEMORANDUM OPINION AND ORDER

Before the Court are the following post-trial motions: (1)
plaintiff Square D's post-trial motion for judgment as a matter of
law (the "JMOL") and for new trial pursuant to Federal Rules of
Civil Procedure 50 and 59; (2) defendant Calabrese's motion to
enhance the award of patent infringement damages and for attorneys
fees pursuant to 35 U.S.C. §§ 284 and 285; and (3) defendant
Calabrese's motion to amend the judgment to add prejudgment
interest.

## BACKGROUND

This is a patent infringement suit brought by Frank Calabrese
against Square D Company ("Square D") for infringement of his U.S.
Patent No. 4,322,849 ("the '849 Patent") relating to a data relay
system for accessing large quantities of data. The case was tried
to a jury and a verdict was returned in favor of Mr. Calabrese.
Specifically, the jury found both direct and contributory

243

infringement of the '849 Patent on the part of Square D with its Seriplex product. The jury also found that Square D willfully infringed the '849 Patent by clear and convincing evidence. The jury awarded Mr. Calabrese $13.2 million in damages.

## DISCUSSION

### Square D's Motion for JMOL

The Court will first address Square D's motion for JMOL. Judgment as a matter of law is appropriate only if the movant shows that the jury's verdict is unsupported by substantial evidence or premised on incorrect legal standards. <u>Odetics, Inc. v. Storage Tech. Corp.</u>, 185 F.3d 1259, 1266 (Fed. Cir. 1999). In evaluating whether the movant has met this standard, the court must view the evidence taken from the record "as a whole," <u>Texas Instruments, Inc. v. Cypress Semiconductor Corp.</u>, 90 F.3d 1558, 1563 (Fed. Cir. 1996), <u>cert. denied</u>, 520 U.S. 1228 (1997)(citation omitted, internal quotes omitted), drawing all reasonable inferences in favor of the non-movant, "without disturbing the jury's credibility determinations or substituting [the court's] resolutions of conflicting evidence for those of the jury." <u>Tec Air, Inc. v. Denso Mfg. Michigan, Inc.</u>, 192 F.3d 1353, 1357-58 (Fed. Cir. 1999)(citation omitted, internal quotes omitted).

In this case, Square D challenges the jury's findings on the following grounds: (1) that the Court's instructions to the jury relating to claim construction was contrary to law, namely, the

Court misinterpreted the claim element "through" and erred in its refusal to instruct as to the meaning of any of the other claim elements; (2) that no substantial evidence supports the finding of direct infringement; (3) that no substantial evidence supports the finding of contributory infringement; (4) that no substantial evidence supports the finding of literal infringement; and (5) that no substantial evidence supports the finding of willful infringement. Upon review of the evidentiary record in light of the applicable legal standards, the Court finds Square D's contentions unpersuasive.

### Claim Interpretation

First, the Court notes that it has already twice rejected Square D's arguments as to the meaning of the claim term "through." The Court continues to stand by its December 21, 1999 Memorandum Opinion and Order that construed the term and finds no reason to revisit that decision here.

Second, the Court rejects Square D's general proposition that a trial court must, in all patent infringement case, instruct the jury as to the meaning of each and every element of a relevant patent claim regardless of whether the meaning of the elements is disputed. Such a proposition flies in the face of the wide discretion trial courts have "to manage proceedings before them to insure both expedition and fairness . . .." <u>Glaros v. H.H.</u>

Robertson Co., 797 F.2d 1564, 1573 (Fed. Cir. 1986), cert. denied, 479 U.S. 1072 (1987).

Exxon Chemical Patents, Inc. v. Lubrizol Corp., 64 F.3d 1553 (Fed. Cir. 1995), Square D's sole authority cited in support of its proposition, is not to the contrary. In that case, the Federal Circuit did not lay down an affirmative duty for trial courts to construe all the elements of a claim each and every time. Instead, the court simply reiterated what is obvious; that when claim terms are contested, a court may not simply rely on proffered definitions but must exercise its judgment and construe the elements itself. Exxon Chemical Patents, Inc., 64 F.3d at 1556.

In this case, both parties consistently represented to the Court that "through" was the only relevant, contested claim term. Therefore, rather than lengthen an already lengthy and complex set of instructions, the Court chose not to encumber the jurors with definitions of additional claim terms that were not going to be an issue in this case. (Tr. 794-97). See, Biodex Corp. v. Loredan Biomedical, Inc., 946 F.2d 850, 854 (Fed. Cir. 1991), cert. denied, 504 U.S. 980 (1992)(". . . jury instructions must be both legally correct and sufficiently comprehensive to address factual issues for which there is disputed evidence of record.")(emphasis added).

Besides, Square D offers no evidence, other than mere conjecture, that instructing the jury as to the other claim terms would have cured any alleged error in the verdict. Id. (to warrant

reversal on the basis of jury instructions, the movant must "demonstrate that the suggested instruction could have cured the error"). Square D suggests that an "evidentiary conflict" was raised during trial as to whether one of the elements of Claim 1 - the "means for sequencing" - must be understood to be located inside another element, the data relay. (Def. Reply at 16). But Mr. Calabrese never contested that the "means for sequencing," as understood in the '849 Patent, was to be located inside the data rely. The only "evidentiary conflict" was whether Seriplex, Square D's accused product, had such a means inside its own data relay - a factual inquiry properly before the jury. Southwall Technologies, Inc. v. Cardinal IG Co., 54 F.3d 1570, 1575 (Fed. Cir.), cert. denied, 516 U.S. 987 (1995)("the trier of fact determines whether the claims as thus construed read on the accused product"). As such, the Court rejects Square D's contention that the jury instructions warrant a JMOL.

## Direct Infringement

In accordance with agreed instructions, the jury was instructed to find direct infringement if Mr. Calabrese proved by a preponderance of the evidence that Square D has made, used, offered for sale, imported, or sold the invention as defined in at least one claim of the '894 Patent. (Tr. 936). Square D asserts that Mr. Calabrese failed to present sufficient evidence that Square D made, used, offered for sale, imported, or sold any

product that included all the elements of the invention. The Court finds otherwise.

Square D insisted before the jury, as it does now, that it could not have infringed the '849 Patent because the accused Seriplex system was only made and sold as individual components, allowing individual consumers to configure the components together in accordance with their own needs. Therefore, Square D argues, even if the complete Seriplex system was infringing, Square D never directly infringed because it never made, sold, or used a complete Seriplex system.

But Mr. Calabrese presented evidence that Square D made and sold components that corresponded to each of the elements of the '849 Patent, and that Square D's own marketing documents showed how all the components could and should work together in a way that infringed the '849 Patent. (See, PX-117). Mr. Calabrese presented testimony suggesting that Square D itself put the components of the infringing system together and used it in order to test the system. (Riley Dep. at 50-52). Evidence was also presented that Seriplex sold software that allowed the user to put the infringing system together and operate it in a way that infringed the '849 Patent. (Tr. 122-23; 343). While Square D certainly presented conflicting evidence, the jury was entitled to accept or reject such evidence as it saw fit. Comark Communications, Inc. v. Harris Corp., 156 F.3d 1182, 1192 (Fed. Cir. 1998)("Simply because evidence is

offered at trial does not mean that the court must assume the jury believed the evidence or gave it the same weight as does the profferor of such evidence.") Drawing all inferences in favor of Mr. Calabrese, the Court finds the juror's finding of direct infringement supported by substantial evidence.

### Contributory Infringement

Also in accordance with agreed instructions, the jury was instructed to find contributory infringement if Mr. Calabrese proved by a preponderance of the evidence (1) that someone directly infringed the '849 Patent; (2) that Square D sold or supplied a material component of the patented invention that is not a staple article of commerce capable of substantial non-infringing use; and (3) with knowledge that the component was especially made or adapted for use in an infringing product. (Tr. 937). Square D attacks the sufficiency of the evidence as to each of the elements of the contributory infringement claim. The Court again finds otherwise.

Mr. Calabrese presented evidence suggesting that even though Square D sold the infringing Seriplex system in component pieces, the real value of the components is their ability to be configured into a system that infringed the '849 Patent. (PX -117; Tr. 629-30; Riley Dep. at 50-51). Further evidence was presented indicating that the Seriplex components are made specifically for use only with the accused Seriplex system and could not be used

with other systems that may not infringe. (Tr. 171, 360-61). Mr. Calabrese also sought to show that Square D encouraged and instructed customers by way of publications to install and use the Seriplex components in a manner that infringed the '849 Patent. (Tr. 112-13; 132-34). Looking at the evidence in a light most favorable to Mr. Calabrese, such evidence was sufficient for the jury to draw the conclusion that customers directly infringed the '849 patent, that the Seriplex components had no other substantial non-infringing use, and that Square D knew about the infringement.

## Literal Infringement

Mr. Calabrese's claims of direct and contributory infringement were both premised solely on a finding of literal infringement. In order for an accused device to literally infringe, each and every limitation of the relevant patent claim must appear in the accused device. <u>Cortland Line Co., Inc. v. The Orvis Co., Inc.</u>, ___ F.3d ___, 2000 WL 156553, at *5 (Fed. Cir., Feb. 14, 2000). When a claim includes a means-plus-function limitation, literal infringement is found only when the accused device both performs the identical function recited in the means limitation and performs that function using the identical or equivalent structure as disclosed in the specification. <u>Carroll Touch, Inc. v. Electro Mechanical Sys., Inc.</u>, 15 F.3d 1573, 1578 (Fed. Cir. 1993).

In this case, the '849 Patent includes a means-plus-function limitation respecting a "means for sequencing a plurality of

parallel data groups." Square D submits that because Mr. Calabrese failed to present any evidence of an identical or equivalent structure in Square D's product that performs the same means as in the invention, JMOL is warranted.

While much conflicting and confusing testimony was presented with regards to this particular limitation, the Court cannot conclude that the jury lacked sufficient evidence to support its finding of infringement. Rather than do a circuit-by-circuit comparative analysis between the invention and the Seriplex system to show structural and functional identity, Mr. Calabrese chose to rely on what he considered admissions from Square D's own witnesses and documents that the Seriplex system also included the "means for sequencing a plurality of data" limitation. (See, e.g., Calabrese Dep. at 71-73; PX-163; Tr. 236; Tr. 88). This is enough. Square D's demand for a circuit-by-circuit comparison in order to establish structural equivalence finds no support in the law. Odetics, Inc. v. Storage Tech. Corp., 185 F.3d 1259, 1266-68 (Fed. Cir. 1999). Furthermore, even if Square D witnesses elaborated upon, refined, or downright contradicted these "admissions" at trial, the jury is not bound, therefore, completely to discredit the inferences and conclusions that could be drawn from the evidence proffered by Mr. Calabrese. Tec Air, Inc., 192 F.3d at 1358 (holding that a Court may not substitute its own resolution of

conflicting evidence for those of the jury in ruling on a JMOL).

Thus, a JMOL is not warranted on the issue of literal infringement.

## Willful Infringement

A finding of willful infringement is warranted where the plaintiff proves, by clear and convincing evidence, that the defendant had no sound reason to believe that its actions were not infringing. SRI Int'l, Inc. v. Advanced Tech. Lab., Inc., 127 F.3d 1462, 1464-65 (Fed. Cir. 1997). Square D's objections to the jury's finding of willful infringement are not well taken. The evidence is sufficiently conflicting as to the competency of the non-infringing opinions written by Square D's outside counsel and Square D's reliance upon the opinions. For example, Mr. Calabrese forcefully raised the issue of whether anyone at Square D ever intended to rely in good faith upon the opinions given the fact that those in management appeared never to have received and evaluated first-hand a copy of any of the opinions. (See, e.g., Tr. 371-73). In such situations, the court lacks discretion to reweigh the evidence. See Jurgens v. CBK, Ltd., 80 F.3d 1566, 1572 (Fed. Cir. 1996). In sum, Square D's motion for JMOL is denied.

## Square D's Motion for New Trial

The Court will next address Square D's motion for a new trial. A new trial is warranted only where an error occurred in the conduct of the trial "that was so grievous as to have rendered the trial unfair." Tec Air, Inc. v. Denso Manufacturing Michigan,

Inc., 192 F.3d 1353, 1361 (Fed. Cir. 1999)(internal quotes omitted, citation omitted). Square D believes that a new trial is appropriate because (1) Mr. Calabrese's counsel improperly appealed to the jury's sympathy in closing arguments by referring to Mr. Calabrese's terminal illness, and (2) the amount of damages lacks evidentiary basis. The Court rejects both grounds.

Upon review of the closing arguments of plaintiff's counsel, the Court finds that any references to Mr. Calabrese's illness were oblique at best and does not rise to the level of grievous error. Square D's reference to a post-trial communication between a member of the jury and Mr. Calabrese does not change that conclusion. Mr. Calabrese's attorney has disclosed to the Court the contents of a letter between the foreperson and Mr. Calabrese, and the Court has had an opportunity to examine the letter thoroughly. The Court finds that the communication clearly took place after the verdict had been rendered and contains only benign congratulations. In sum, nothing in the letter indicates that the verdict was driven by sympathy for Mr. Calabrese's condition.

The Court also finds that the jury's determination of damages was not against the clear or great weight of the evidence. Unisplay, S.A. v. American Electronic Sign Co., Inc., 69 F.3d 512, 517 (Fed. Cir. 1995)(new trial on damages warranted only where the verdict is against the clear or great weight of the evidence). In awarding damages, the jury was instructed to determine a reasonable

royalty for the use of the '849 Patent as would have resulted from a hypothetical negotiation between Mr. Calabrese and Square D at the time the infringement began. (Tr. 945); see also, Rite-Hite Corp. v. Kelley Co., Inc., 56 F.3d 1538, 1554 (Fed. Cir.), cert. denied, 516 U.S. 867 (1995)(holding that any damages determined on the basis of hypothetical negotiations should be based on a supposed meeting between the parties at the time the infringement began). The jury was also instructed that a reasonable royalty may be calculated as a lump-sum, paid-up license based on projected royalties as of the date the infringement began. (Tr. 947). See also, Snellman v. Ricoh Co., Ltd., 862 F.2d 283, 289 (Fed. Cir. 1988), cert. denied, 491 U.S. 910 (1989)(upholding an award of lump-sum royalty based on projected sales). In accordance with these instructions, the jury awarded Mr. Calabrese $13.3 million. Both parties agree that the figure can be broken down to represent a royalty rate of about 17% applied to one of Square D's 1995 projected sales figures for the Seriplex products of about $77 million.

The law does not mandate a specific royalty rate or a particular damage methodology since the "[c]alculation of a reasonable royalty depends on the particular facts of each case." Mahurkar v. C.R. Bard, Inc., 79 F.3d 1572, 1579 (Fed. Cir. 1996). In the end, the jury's calculations will not be overturned if it is

"within the range encompassed by the record as a whole." <u>Unisplay,</u>
<u>S.A.</u>, 69 F.3d at 519.

In this case, Mr. Calabrese presented evidence that Square D
was willing to pay a third party a rate as high as 17% of cost for
the right to sell a critical component of the infringing system.
(Tr. 622). Mr. Calabrese also presented evidence that when
Square D began infringing the '849 Patent, Square D was projecting
sales figures of anywhere between $74 million and $91 million.
(Tr. 155, 401, PX-120, PX-161, PX-135). While Square D denied to
the jury, as it does now, that the 17% rate makes any sense as a
royalty rate and that the projected sales figures should be ignored
because they turned out to be greatly inflated, the jury was
entitled to credit Mr. Calabrese's evidence over that of Square D.
Cost figures are relevant factors in calculating a reasonable
royalty rate. <u>Cf.</u>, <u>Mahurkar</u>, 79 F.3d at 1580 (upholding district
court's calculation of a 25.88% royalty rate on the basis of profit
margin calculations); <u>TWM Mfg. Co., Inc. v. Dura Corp.</u>, 789 F.2d
895, 899 (Fed. Cir.), <u>cert. denied</u>, 479 U.S. 852 (1986)(upholding
20% royalty rate on the basis of profit margin calculations).
Furthermore, projected sales figures are also relevant factors in
calculating damages, even if plaintiff counters those figures with
actual sales that turn out to be much lower than anticipated. <u>See</u>
<u>Snellman</u>, 862 F.2d at 289 (holding that the jury justifiably could
have calculated a lump sum royalty based on defendant's expected

sales of the infringing product); TWM Manufacturing Co., 789 F.2d at 899 (approving reliance on projected profit figures as opposed to actual profits calculated after the fact). As such, the Court will not disturb the jury's damage figures.

### Calabrese's Motion for Enhanced Damages and Attorneys Fees

The Court now turns to Mr. Calabrese's motion for enhanced damages and attorneys fees. A court may enhance damages "up to three times the amount found or assessed" where a party has been found to have willfully infringed or to have acted in bad faith. 35 U.S.C. § 284; Cybor Corp. v. FAS Tech., Inc., 138 F.3d 1448, 1461 (Fed. Cir. 1998). The penalty, however, need not be assessed in every case where willful infringement or bad faith has been found. See e.g., Modine Mfg. Co. v. The Allen Group, Inc., 917 F.2d 538, 543 (Fed. Cir. 1990), cert. denied, 500 U.S. 918 (1991). A trial court's decision to enhance damages and by how much is discretionary, made in light of the totality of the circumstances. SRI Int'l, Inc. v. Advanced Tech. Lab., Inc., 127 F.3d 1462, 1465 (Fed. Cir. 1997).

In this case, while the jury's finding of willful infringement was supported by sufficient evidence, the Court nevertheless finds the evidence to be too close to warrant an award of enhanced damages. See, Modine Mfg. Co., 917 F.2d at 543 (upholding denial of enhanced damages where evidence of willfulness sufficiently close); Cybor Corp., 138 F.3d at 1461 (same). The technology

represented in this patent suit and the corresponding factual questions were exceedingly complex. The complexity and closeness of the issues are highlighted by the fact that Square D actually succeeded in convincing a prior court to grant summary judgment in its favor against Mr. Calabrese, Calabrese v. Square D Co., 14 F. Supp.2d 1050 (N.D. Ill. 1998), a decision eventually overturned by the Federal Circuit. Calabrese v. Square D Co., 1999 U.S. App. LEXIS 21930 (Fed. Cir. Sept. 13, 1999). It is noteworthy that in that previous district court decision, Judge Shadur disagreed with the eventual conclusion of this Court as to the meaning of the critical claim term "through." Calabrese, 14 F. Supp.2d at 1054. While the Court is convinced that the correct interpretation was reached here, it finds that the disagreement is illustrative of the complexity and closeness of the issues and, accordingly, denies Mr. Calabrese's motion for enhanced damages.

Likewise, for the above reasons, the Court finds that this case is not sufficiently "exceptional" to warrant the awarding of attorneys fees. Modine Mfg. Co., 917 F.2d at 543. The Patent Act provides for an award of attorneys fees to the prevailing party in "exceptional cases" such as when there has been an express finding of willful infringement. 35 U.S.C. § 285; Modine Mfg. Co., 917 F.2d at 543. But, again, as with enhanced damages, not every case of willful infringement deserves an award of attorneys fees. S.C.

Johnson & Sons, Inc. v. Carter-Wallace, Inc., 781 F.2d 198, 201
(Fed. Cir. 1986).

As noted above, the Court finds that this case involved
exceedingly complex and difficult issues of fact, which made the
issue of willful infringement close. Cybor Corp., 138 F.3d at 1460
(closeness of the issues relevant in denying motion for attorneys
fees under § 285). The Court also rejects Mr. Calabrese's
contentions that the litigation tactics of Square D's counsel
warrants attorneys fees. Id. at 1461 (infringer's litigation
behavior relevant in denying motion for attorneys fees under
§ 285). The Court finds that Square D's actions during discovery
and at trial in what was a hotly contested litigation for both
sides do not take this case into the realm of the exceptional. In
fact, this case was hurried to trial with Square D's cooperation
due to Mr. Calabrese's failing health. In sum, Mr. Calabrese's
motion for enhanced damages and attorneys fees are denied.

### Calabrese Motion for Prejudgment Interest

Finally, the Court addresses Mr. Calabrese's motion for
amendment of judgment to include prejudgment interest. A
prevailing plaintiff in a patent infringement suit is ordinarily
entitled to an award of prejudgment interest in order to provide
complete compensation to the owners of the infringed patents. 35
U.S.C. § 284; General Motors Corp. v. Devex Corp., 461 U.S. 648,
655-56 (1983). Square D contends, however, that prejudgment

- 16 -

interest should not be awarded in this case because the awarded damages are so large as to indicate that the jury already took into account the time-value of money. In the alternative, Square D urges the Court calculate any prejudgment award on the basis of a simple interest rate actually paid by Square D, applied to prorated portions of the damage award per year.

First, the Court finds that prejudgment award is appropriate as nothing indicates that the jury took into account the time-value of money in determining damages. The jury was not instructed to take into account such a factor and the Court, on the basis of mere speculation, will not assume that the jurors disregarded the instructions. <u>Amsted Industries Inc. v. National Castings, Inc.</u>, No. 88 C 0924, 1990 U.S. Dist. LEXIS 16657, at *7-8 (N.D. Ill., Dec. 6, 1990)(in the absence of jury instructions to the contrary, the court finds the jury did not include time-value of money in awarding patent infringement damages); <u>Malta v. Schulmerich Carillions, Inc.</u>, 952 F.2d 1320, 1342 (Fed. Cir. 1991), <u>cert. denied</u>, 504 U.S. 974 (1992)(jury is assumed to have followed instructions).

Second, the Court finds the appropriate prejudgment interest award is calculated at the prime rate on the entirety of the $13.3 million damages, compounded monthly beginning February 1, 1995 through the date of entry of judgment, January 26, 2000. "The rate of prejudgment interest and whether it should be compounded or

not compounded are matters left largely to the discretion of the district court." Bio-Rad Laboratories, Inc. v. Nicolet Instrument Corp., 807 F.2d 964, 969 (Fed. Cir. 1986), cert. denied, 482 U.S. 915 (1987).

The Court chooses the prime rate because the prime – in the absence of any other rate affirmatively demonstrated by the parties as more appropriate – is a rate sufficient to "compensate plaintiffs not only for the loss of the use of their money but also for the risk of default." Gorstein Enterprises, Inc. v. Quality Care-USA, Inc., 874 F.2d 431, 436-37 (7th Cir. 1989). Square D urges the Court to apply rates lower than prime because Square D apparently was able to actually secure some loans at lower rates. But Square D does not sufficiently demonstrate that its suggested rates are applicable in this case. It is clear from the declaration of Square D's Vice President and Treasurer, that the suggested rates were obtained only as to certain "short-term" loans. (See Declaration of Richard O'Shanna, Def. Opp. at Ex. C). However, Square D offers no evidence that the particular conditions that applied to these "short term" loans are applicable here to fairly compensate Mr. Calabrese, especially for any risk of default given the length of time he was deprived of compensation. Gorstein, 874 F.2d at 436. In the absence of an affirmative demonstration of a more appropriate rate, the prime shall serve as the applicable rate.

Furthermore, the calculation will be applied to the whole of the $13.2 million damages award at the outset and compounded monthly. The jurors were instructed that damages may be calculated as a lump-sum, paid-up license and Square D offers no challenge to Mr. Calabrese's characterization of the awarded damages as one reflecting such a lump-sum payment. Instead, Square D urges a pro rata calculation simply on the basis of an unsupported assertion that the typical licensing relationship requires that the rates be based on the percentage of the royalty attributable to each year of sales. (Def. Opp. at 3). The Court finds no such requirement in this case and concludes that full compensation will be accomplished by calculating the interest on the entirety of the damages award, compounded monthly. See Amsted Industries Inc., 1990 U.S. Dist. LEXIS 16657 at *14 (holding that compounding is consistent with the goal of fully compensating the plaintiff for the lost time value of the money it would have earned absent the defendant's infringement). In sum, the Court accepts the calculations submitted by Mr. Calabrese for prejudgment interest, (Pltf. Motion to Amend the Judgment to Add Prejudgment Interest, Ex. B), and accordingly awards $6,819,780.00 in prejudgment interest.

### CONCLUSION

For the reasons stated herein, the Court orders the following:

(1)  Square D's Post-Verdict Motion for Judgment as a Matter of Law and for New Trial is denied;

(2)    Frank Calabrese's Motion to Enhance the Award of Patent Infringement Damages and for Attorneys Fees is denied;

(3)    Frank Calabrese's Motion to Amend the Judgment to Add Prejudgment Interest is granted in the amount of $6,819,780.00.

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

Date: _March 23, 2000_





# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Suzanne B. Conlon | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 48 | **DATE** | 3/23/2000 |
| **CASE TITLE** | FT Mortgage vs. Hecker, et al | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Plaintiff's motion for summary judgment of foreclosure is granted. Summary judgment is entered for plaintiffs and against the defendant, United States of America/United States Department of Housing and Urban Development. Plaintiff's motion for default order is granted. Enter order of default against defendants Alfred M. Hecker, Cynthia M. Hecker and Green Tree Financial Services. Enter judgment of foreclosure for plaintiffs and against the defendants in the total amount of $91,319.20. Enter order appointing Michael Polelle as special commissioner of public sale of property. Prove-up set for March 23, 2000 is stricken.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | +1F | **Document Number** |
| | Notices mailed by judge's staff. | number of notices | |
| | Notified counsel by telephone. | 3-24-00 | |
| ✓ | Docketing to mail notices. | date docketed | 10 |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| TP/ WCS | courtroom deputy's initials | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

njf3

Fisher And Fisher
File # 40654

## IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

FT Mortgage Companies d/b/a FTB )
Mortgage Services f/k/a Carl I Brown & )
Companies )
Plaintiff )
VS. )  NO. 00 C 0048
Alfred M. Hecker and Cynthia M. )  Judge CONLON
Hecker, United States of )
America/United States Department of )
Housing and Urban Development and )
Green Tree Financial Servicing )
Corporation )
Defendant )

DOCKETED
MAR 2 4 2000

### DEFAULT ORDER

THIS CAUSE COMING ON TO BE HEARD ON motion of plaintiff for entry of an Order finding certain Defendants in default;

IT IS ORDERED the following defendants are in default:

Alfred M. Hecker, Cynthia M. Hecker and Green Tree Financial Services.

ENTER: _Suzanne B. Conlon_
                    JUDGE

Elizabeth Kaplan Meyer
Renee F. Meltzer
Michael S. Fisher
Elizabeth T. Sewruk
Erik E. Blumberg
Marc D. Engel
Julie E. Fox
FISHER AND FISHER
ATTORNEYS AT LAW, PC
120 N. LASALLE, SUITE 2520
CHICAGO, IL 60602
TELEPHONE: 773-854-8055

10

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| FT Mortgage Companies d/b/a FTB Mortgage Services f/k/a Carl I Brown & Companies<br>**Plaintiff**<br>VS.<br>Alfred M. Hecker and Cynthia M. Hecker, United States of America/United States Department of Housing and Urban Development and Green Tree Financial Servicing Corporation<br>**Defendant** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **NO. 00 C 0048**<br>**Judge CONLON** |



DOCKETED
MAR 2 4 2000

## <u>JUDGMENT OF FORECLOSURE</u>

This cause coming on to be heard on Plaintiff's Motion for Judgment, the Court FINDS:

1.   That it has jurisdiction of the parties hereto and the subject matter hereof and that service of process in each instance was properly made.

2.   That the date when the last of the owners of the equity of redemption were served with summons or by publication was January 11, 2000.

3.   That the redemption period in this case shall expire on August 12, 2000, unless shortened by further order of this Court.

4.   That by virtue of the Mortgage and the Note secured thereby, there is due from the Mortgagors to the Plaintiff, and the Plaintiff has a valid and subsisting lien for said amount upon the hereinafter described property as follows:

| | |
|---|---|
| Unpaid Principal: | $81,343.37 |
| Accrued interest on unpaid principal to March 23, 2000: | $ 6,100.74 |
| Advances by Plaintiff: | $ 1,048.19 |
| Late Charges: | $   237.00 |
| Bankruptcy Fees & Cost: | $   875.00 |
| Costs of Suit: | $   914.90 |
| Plaintiff's Attorneys' fees: | $   800.00 |
| TOTAL JUDGMENT INDEBTEDNESS | $91,319.20 |

5. The Mortgage described in the Complaint and hereby foreclosed appears of record in the Office of the Recorder of Deeds of LAKE County, Illinois as Document No. 3328325, and the subject property is legally described as follows:

Lot 22 in Block 186 in Round Lake Beach  Woodland Addition, being Subdivision of part of the South west 1/4 of the South east 1/4 of Section 20 and the West Half  of the North East 1/4 of Section 29, Township 45 North, Range 10, East of the Third Principal Meridian, according to the Plat thereof recorded June 2, 1943 as Document  528773 in Book 28 of Plats, page 88, in Lake County, Illinois.
C/k/a 317 Maple Lane, Round Lake, IL 60073
Tax ID# 06-29-211-005

6. The names of Defendants personally liable for the deficiency, if any are:  Alfred M. Hecker and Cynthia M. Hecker

7. The rights and interests of all the other parties to this cause in the subject property, are inferior and subordinate to the lien of the Plaintiff and are described as follows:  United States of America/United States Department of Housing and Urban Development by reason of Mortgage dated January 24, 1996 and recorded February 6, 1996 as document number 3781481 made by Alfred M. Hecker and Cynthia M. Hecker to Pan American Financial Services in the amount of $7,703.06 and assigned to Mego Mortgage recorded February 6, 1996 as Document number 3781482 and assigned to First Trust of New York, National Association, as Trustee under the pooling and servicing agreement dated as of March 21, 1996  recorded January 17, 1997 as Document number 39211855 and further assigned to  the United State of America. Said assignment recorded September 17, 1999 as document number 4421118.  Green Tree Financial Servicing Corporation by reason of Mortgage dated December 15, 1991 and recorded January 24, 1997 as Document number  3924680 made by Alfred M. Hecker and Cynthia M. Hecker  in the amount of $31,651.04..

The aforementioned liens are not to be considered judgments by virtue of this Order, but which are subject to further order of this Court.

8. The Plaintiff has been compelled to retain legal counsel and to advance money in payment of costs, fees, expenses and disbursements for taxes, assessments and insurance in connection with this foreclosure, which under the terms of the Mortgage are made a lien upon the mortgaged real estate and which the Plaintiff is entitled to recover together with interest on all advances at the rate of interest provided in the Mortgage, from the date on which such advances are made.

9.   The allegations in Plaintiff's Complaint are true, and the equities in the cause are with Plaintiff, and Plaintiff is entitled to the relief prayed for in the Complaint including foreclosure of said Mortgage upon the real estate described therein in the amount of the Total Judgment Indebtedness as found above, together with interest thereon at the statutory rate after the entry of this Judgment and with additional advances, expenses, and court costs as may be paid out by Plaintiff thereafter.

IT IS THEREFORE, ORDERED, ADJUDGED AND DECREED:

1.   REDEMPTION:  The Defendant(s) homeowner(s) are ordered to pay to the Plaintiff the Total Judgment Indebtedness found due above before the expiration of the redemption period together with additional attorneys' fees, costs, advances, and expenses incurred thereafter with interest.  In default of such payment, upon expiration of the redemption period, the mortgaged real estate may, at Plaintiff's discretion, be sold to satisfy the amount due to the Plaintiff together with the interest, advances, and expenses incurred after judgment at the statutory judgment rate from the date of the Judgment. This Court has approved the portion of the lien attributable to attorneys' fees in Finding 4 only for purposes of the foreclosure sale, and not for purposes of determining the amount required to be paid personally by Defendant in the event of redemption by defendants, or a deficiency judgment, or otherwise. With respect to the Internal Revenue Service and pursuant to 28 U.S.C. §2410, the United States of America shall be granted one-hundred and twenty days from said sale.

2.   THE SALE shall be by public auction with open verbal bid conducted by a Special Commissioner to be appointed by this Court.  Exceptions to which title shall be subject at the sale shall include unpaid general real estate taxes, special assessments upon the real estate, easements and restrictions of record, as well as any liens of records prior in right and interest to the lien herein foreclosed as well as any subordinate liens not included in this action and not foreclosed hereby.

3.   PUBLICATION FOR SALE A Notice Of Sale specifying the time, date and location of the sale and identifying and describing the real estate to be sold shall be published at least three consecutive calendar weeks, once in each week.  The first such notice is to be published no more than 45 days prior to the sale, the last such notice to be published not less than 7 days prior to the sale, pursuant to law.  If the sale is to be continued to a later date less than 60 days after the last scheduled sale, notice of any adjourned sale shall be given verbally at the originally scheduled sale time and place.

4. REPORT OF SALE The person conducting the sale shall prepare a Report Of Sale specifying the amount of proceeds of sale realized and the disposition thereof. Said Report shall be delivered to Plaintiff's Attorney for presentation to the Court for its approval. Out of the proceeds of the sale, the person conducting the sale shall retain his fees and costs. Out of the remainder of such proceeds, the person conducting the sale shall pay to the Plaintiff the amount of this Judgment found to be due with interest on said sum, at the rate of Nine (9%) percent per annum from the date of this Judgment to the date of sale plus advances by Plaintiff for the publication for Sale, taxes, maintenance, late charges, and other necessary items, plus interest thereon from the date of said expenditure to the date of sale.

In the event any party to this foreclosure is the successful bidder at the sale, such party may offset against the purchase price to be paid for such real estate the amounts due such party under this Judgment of Foreclosure, once said party's lien position has been adjudicated by the Court, plus amounts advanced for costs and expenses with interest thereon. In the event of a 3rd party bidder, the successful bidder shall pay to the person conducting the sale, no less than 10% down in certified funds, and the balance within 24 hours of the date of the sale. If the remainder of the proceeds shall not be sufficient to pay the above described amounts the person conducting the sale shall then specify the amount of the deficiency in his Report of Sale. If such remainder shall be more than sufficient to pay such amounts, the person conducting the sale shall hold the surplus subject to the further order of this Court.

5. CERTIFICATE OF SALE:  After the sale, the person conducting the sale shall give a Certificate of Sale to the purchaser. The certificate shall be freely assignable by endorsement thereon. Upon confirmation of the sale by Order of this Court, the person who conducted the sale shall execute a deed to the holder of the Certificate of Sale sufficient to convey title. Such conveyance shall be an entire bar of all claims of parties to the foreclosure and all claims of non record claimants given notice of the foreclosure as provided by statute.

6. POSSESSION  The Mortgagor shall have possession of said real estate until the sale is confirmed unless an order of Court to the contrary is entered. Upon confirmation of the sale by Order of this Court, the purchaser or his assigns, shall have a right to possession of the premises conveyed and any of the parties in this cause who are in possession of said premises, and any persons who, since the commencement of this suit, have come into possession shall surrender possession thereof to such purchaser or be subject to eviction, 30 days after the Order for Possession is entered by this Court.

7.  The Court hereby retains jurisdiction of the subject matter of this cause and of all the parties hereto for the purpose of enforcing this Judgment, and for appointing a Receiver during the redemption period if necessary.

8.  <u>TERMINATION OF LEASES</u>  All leases now existing with respect to the subject property shall automatically be terminated upon the sale of the subject property at public auction as set forth hereinbelow.

ENTERED:

_____
Judge

DATED:_____
Elizabeth Kaplan Meyers
Renee F. Meltzer
Michael S. Fisher
FISHER AND FISHER
Attorneys at Law, P.C. #3309
120 North LaSalle, Suite 2520
Chicago, IL 60602
Telephone:(773)854-8055

njf8

### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| FT Mortgage Companies d/b/a FTB Mortgage Services f/k/a Carl I Brown & Companies  Plaintiff | ) ) ) |
| VS. | ) |
| Alfred M. Hecker and Cynthia M. Hecker, United States of America/United States Department of Housing and Urban Development and Green Tree Financial Servicing Corporation  Defendant | ) ) ) ) ) ) |

NO. 00 C 0048
Judge CONLON

DOCKETED

MAR 2 4 2000

### SUMMARY JUDGMENT ORDER

This cause coming on to be heard on motion of plaintiff, FT Mortgage Companies d/b/a FTB Mortgage Services f/k/a Carl I Brown & Companies, for summary judgment, against Defendant, **United States of America/United States Department of Housing and Urban Development** and this Court being fully advised;

IT IS HEREBY ORDERED that this Court finds there is no genuine issue of any material fact as to Mortgagee's claim against Defendant, **United States of America/United States Department of Housing and Urban Development** and Mortgagee is therefore entitled to a judgment as a matter of law against Defendant (see Fed.R.Civ.P.56), that judgment is included in the Judgment for Foreclosure being entered contemporaneously with this order.

DATE: _____     ENTER: _Suzanne B. Conlon_

JUDGE

Elizabeth Kaplan Meyers
Renee F. Meltzer, Michael S. Fisher
Erik E. Blumberg, Marc D. Engel
Julie E. Fox, FISHER AND FISHER
Attorneys At Law, P.C., 120 North LaSalle Street
Chicago, IL 60602, 773-854-8055



njf5

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| FT Mortgage Companies d/b/a FTB Mortgage Services f/k/a Carl I Brown & Companies<br>Plaintiff<br>VS.<br>Alfred M. Hecker and Cynthia M. Hecker, United States of America/United States Department of Housing and Urban Development and Green Tree Financial Servicing Corporation<br>Defendant | ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

NO. 00 C 0048
Judge CONLON

DOCKETED

MAR 2 4 2000

## ORDER APPOINTING SPECIAL COMMISSIONER

IT IS ORDERED THAT **Michael Polelle** is hereby appointed Special Commissioner of this Court for the purpose of the sale at public vendue of the property that is the subject matter of this action.

ENTERED _Suzanne B. Conlon_
JUDGE

Elizabeth F. Kaplan
Renee F. Meltzer
Michael S. Fisher
Elizabeth T. Sewruk
Erik E. Blumberg
Marc D. Engel
Julie E. Fox
FISHER AND FISHER
Attorneys at Law PC
120 N. LaSalle St.
Chicago, IL 60602
(773) 854-8055

